UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT LAUDERDALE DIVISION

CASE NO. 0:23-cv-60777-AHS

STEVEN I. PERETZ,

    Plaintiff,

v.

CITIBANK, N.A., CENLAR FSB, EQUIFAX
INFORMATION SERVICES LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., and
TRANSUNION, LLC,

    Defendants.
_____/

### DEFENDANTS TRANS UNION LLC, EQUIFAX INFORMATION SERVICES, LLC, AND EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF JOINT MOTION TO DISMISS

Defendants Trans Union LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (together, the "CRA Defendants"), jointly submit the following Reply Brief in support of their Joint Motion to Dismiss ("Motion") [ECF No. 43].

At bottom, Plaintiff's Opposition fails to adequately address either of the two independent bases for dismissal. First, after admitting that the reporting was accurate, Plaintiff retreats to arguing that the accurate reporting was somehow misleading because it was negative. But, of course, it is well-settled that reporting accurate information—even if that information is derogatory—does not violate the FCRA.

Second, Plaintiff does not meaningfully explain how his claims involve factual issues rather than legal ones. Plaintiff's theory of liability—that he is somehow not responsible for a loan he co-signed for—is one involving the legal interpretation of the duties owed to him by Cenlar and Citibank under either the terms of their contracts or Florida law. *See* Mot. at 9-12. Plaintiff twists himself into knots trying to turn this obvious legal question into a factual one by framing the question as "whether Plaintiff ignored notices from the Furnishers that payment was due, whether

1

Plaintiff intentionally refused to pay, and whether Plaintiff is a deadbeat debt-dodger[.]" Opp. at 8. Setting aside that these are facts the CRAs would not and could not know the answer to, they are merely the background facts that would help answer the legal question at hand. That resolving the legal dispute requires consideration of facts does not make the question any less legal in nature.

Plaintiffs' claims against the CRA Defendants (Counts I and II of the Complaint) should be dismissed with prejudice.

## I.    ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Opposition Confirms that He Does Not—and Cannot—Plausibly Plead an Inaccuracy.

As Plaintiff acknowledges, it is his burden at the pleadings stage to plausibly allege facts that a CRA prepared a report that contained inaccurate information. *See* Opp. at 5 (citing *Ray v. Equifax Info. Servs.*, 327 F. App'x 819, 826 (11th Cir. 2009); *Enwonwu v. Trans Union, LLC*, 164 F. App'x 914, 918 (11th Cir. 2006); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). Plaintiff's attempt to meet this burden relies on two paragraphs from the Complaint:

> 57.    The information reported is objectively misleading because a reasonable creditor would interpret the reports as portraying Mr. Peretz as a debtor unable to make timely payments even when faced with a foreclosure action, or otherwise being uncreditworthy.
>
> 58.    No report stated that Mr. Peretz was a secondary debtor, that no statements or demands had ever been sent to Mr. Peretz, or otherwise correcting the most reasonable interpretation of the information reported.

Opp. at 6 (quoting ECF No. 1, ¶¶ 57-58).

These allegations do not—and cannot—plausibly plead the existence of an inaccuracy under Eleventh Circuit law. *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) (Credit reporting is "inaccurate" if it contains "factually incorrect information" or if it contains "factually correct information but nonetheless misleads its users as

2

to its meaning or implication.").[1] As Plaintiff makes clear, he does not allege that any information in the CRAs' reporting was factually incorrect. *See generally* Opp. The Complaint alleges that Plaintiff agreed to sign a $175,000 home equity line of credit with his then-girlfriend and that she fell behind on the payments. Compl. ¶¶ 39, 45. Indeed, Plaintiff's Opposition repeatedly emphasizes that he "does not dispute the validity of the debt," and he does not "dispute that the account was delinquent." Opp. at 6-7.

Plaintiff then retreats to arguing that the CRAs' reporting was objectively misleading because the accurate reporting (1) portrays him as a "deadbeat delinquent who refused to make payments on a mortgage for so long that foreclosure proceedings were initiated against him" or (2) was incomplete because it did not provide additional information stating that Mr. Peretz was a "cosigner on the account at issue that had not received notice of the account's delinquency." *Id.* at 4-8.[2] Both arguments are unsupported by Plaintiff's own cited authority, *Erickson v. First Advantage Background Services Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020), and accepting Plaintiff's arguments would contradict binding precedent and fundamentally change CRAs' requirements under the FCRA.

---

[1] Plaintiff argues that the CRAs' Motion uses the wrong standard for accuracy under the FCRA. *See* Opp. at 2, 5. Plaintiff's failure to include a citation for this argument is telling. *See id.* Both the Motion and the Opposition cite the same language from *Erickson*. *Compare* Mot. at 6 *with* Opp. at 5-6.

[2] Plaintiff had the opportunity to submit a brief statement of his version of the dispute to the CRAs which would then be included in subsequent consumer reports. *See* 15 U.S.C. § 1681i(b)-(c); *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.3, 1160 n.23 (11th Cir. 1991) (explaining remedy for consumers to enclose a statement to creditors with their version of a dispute). Plaintiff does not allege that he did so here.

3

       **1.**    ***Erickson* Does Not Stand for the Proposition that Any Accurate but Unfavorable Reporting Is Misleading as to its "Meaning or Implication."**

Plaintiff's assertion that the CRAs' reporting is misleading "as to its meaning or implication" alters *Erickson*'s language beyond recognition. *Id.* at 6-7; *see also* Compl. ¶ 57. In *Erickson*, the Eleventh Circuit considered whether information in a background check involving a search of registered sex-offender records was accurate. 981 F.3d at 1248. It is true that the *Erickson* decision uses the words "meaning or implication" when clarifying the meaning of "accuracy" within the Eleventh Circuit: "[credit reporting is "inaccurate"] if it contains "factually correct information but nonetheless misleads its users as to its ***meaning or implication***." *Id.* at 1251-52 (emphasis added). But Plaintiff takes this too far by suggesting that the "meaning or implication" of accurate information could portray him as a "deadbeat" and render the CRAs' reporting inaccurate. Opp. at 7, 11.

This argument ignores that accuracy is an objective standard, *Erickson*, 981 F.3d at 1252, and it is unsurprising that Plaintiff cites no authority for the proposition that reporting accurate, derogatory information is objectively misleading. If Plaintiff's position were true, CRAs would never be able to report late payments for consumers lest they portray the consumer as a "deadbeat." In other words, ***any*** negative reporting whatsoever would be inaccurate under the FCRA because the "meaning or implication" of that information could portray the consumer in a negative light, even if the negative information were in fact true.

The Eleventh Circuit's decision in *Cahlin v. General Motors Acceptance Corp.* explicitly precludes this argument: the FCRA does not impose a duty "to report only that information which is favorable or beneficial to the consumer." 936 F.2d 1151, 1158 (11th Cir. 1991). This is because Congress enacted the FCRA with the twin goals of ensuring that CRAs' procedures were "fair and equitable to consumers" and also met the "needs of commerce." *Id.* Indeed, CRAs' economic

purpose would be "significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Id.* That a consumer co-signed a loan that became significantly delinquent—facts that Plaintiff acknowledges and alleges in his own Complaint—is relevant to potential creditors and is the type of information that a credit report is meant to supply. *See, e.g.*, *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) (citing Black's Law Dictionary's definition of "creditworthy"). The very nature of co-signing a loan is that the co-signer *is responsible*. It is unavoidably true that Plaintiff failed in that responsibility, whether he likes it or not, and whether it was his fault or not.

Plaintiff's suggestion that the CRAs' reporting portrays him as a "deadbeat" is a subjective characterization that ignores the fact that he apparently *did* fail to make timely payments on an account that he co-signed with his then-girlfriend. Compl. ¶¶ 39, 45, 51. Plaintiff does not dispute either the validity of the debt or the fact that the account was delinquent. Opp. at 6-7. Here, as in *Erickson*, an accurate report is not actionable, even if the information is unfavorable or upsetting. *Erickson*, 981 F.3d at 1254 ("It may well be that the report harmed Erickson, not because of any inaccuracies, but because it brought to light the difficult past of his estranged father. But an accurate report is not actionable under the [FCRA], no matter how embarrassing or hurtful it may prove."). And, in any case, industry participants are all well aware that consumers often have very good excuses and reasons for accounts that report as delinquent—having one does not make someone a "deadbeat."

> 2. **CRAs Are Not Required to Provide Additional Notations to Explain Accurate Reporting.**

Plaintiff also argues that the fact that the reporting did not include additional detail identifying him as a "secondary debtor" or a "cosigner on the account at issue that had not received notice of the account's delinquency" somehow renders it inaccurate. Opp. at 6; Compl. ¶ 58. Relying on *Erickson*, Plaintiff argues that as a result, "the information reported was incomplete to

a degree which could reasonably mislead a third-party reviewing the information in order to make a credit decision about Plaintiff." Opp. at 7.

*Erickson* does not bolster Plaintiff's argument that the CRAs are required to report additional information about the account, especially when Plaintiff does not deny that the account is his or allege that any of the information was inaccurate. *See id.* at 6 ("Unlike the *Erickson* defendant, nowhere in their reporting do CRAs indicate that the Plaintiff was a cosigner on the account at issue that had not received notice of the account's delinquency, nor would the reporting of the account tradelines prompt a reasonable user that it would need to conduct further investigation into the same."). The reporting in *Erickson* included information in a background check involving a search of registered sex-offender records. 981 F.3d at 1248-50. At issue in *Erickson* was whether the background report matching the Plaintiff to a known sex-offender record (the Plaintiff's father) was objectively misleading. *Id.* at 1253. The court found that the reported information was "factually correct" and that "the only objectively reasonable interpretation of the report was one that was *not* misleading." *Id*. As the court explained, "[a] reasonable user would not take adverse action against Erickson based on this report because the only reasonable understanding of it was that someone with Erickson's name was a registered sex offender in Pennsylvania—not that Erickson himself was that person." *Id.*

*Erickson* does not stand for Plaintiff's broad proposition that CRAs are required to provide additional context about otherwise accurate information. And it does not support Plaintiff's unique claim that the CRAs are required to indicate that consumers "are cosigner[s] on the account at issue that had not received notice of the account's delinquency." Opp. at 6. Here, unlike the Plaintiff in *Erickson*, the account is in fact one that he co-signed with his then-girlfriend. Compl. ¶ 39. And Plaintiff does not dispute that the account was seriously delinquent. *Id.* at 6-7. This is not a case in which confusion exists as to whether an account in fact belongs to a consumer or

6

whether a name is attributable to particular information. Facts are stubborn things, whether Plaintiff likes them or not. Regardless, cases from across the country recognize that a CRA's failure to explain a consumer's excuse for an otherwise accurate credit report entry is not the type of misleading omission that can support an FCRA claim. *See, e.g.*, *Carvalho, LLC*, 629 F.3d at 891-92; *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998); *Braun*, No. 2:19-cv-06098, 2019 WL 13083348, at *2-*3 (C.D. Cal. Oct. 10, 2019); *Tuttobene v. Trans Union, LLC*, Case. No. 2:19-cv-01999-APG-NJK, 2021 WL 2188232, at *2 (D. Nev. May 28, 2021); *Tom Chen v. Vertical Screen, Inc.*, 2017 WL 3704836, at *4 (W.D. Wash. Aug. 28, 2017); *Taylor v. Screening Rep., Inc.*, No. 13-CIV-2886, 2015 WL 4052824, at *5 (N.D. Ill. Jul. 2, 2015); *Haro v. Shilo Inn.*, No. CIV-08-6306-AA, 2009 WL 2252105, at *3 (D. Or. Jul. 27, 2009). Even when "completeness" is an aspect of accuracy under the FCRA, it has long been the rule that "only a truly extraordinary case would justify liability on the basis of an incomplete, but not misleading, credit report." *Sepulvado*, 158 F.3d at 896. This is not that "truly extraordinary" case because Plaintiff acknowledges that the account was his and that it was seriously delinquent.

### B. Plaintiff's Dispute with Cenlar and Citibank Involves Legal Issues.

As fully explained in the CRAs' Motion, Plaintiff's theory of liability hinges on the CRAs engaging in a legal analysis of the nature of Plaintiff's relationship with Cenlar and Citibank and requirements under Florida law. Plaintiff believes that because "no statements or demands had ever been sent to [him]" that the CRAs should have somehow concluded the reporting was inaccurate (after somehow learning of that fact in the first place). Compl. ¶ 58. The FCRA does not go nearly as far as requiring CRAs to engage in applying facts unbeknownst to them to come to legal conclusions.

In the face of unequivocal caselaw confirming that only factual inaccuracies—not legal disputes between a consumer and a furnisher of information—give rise to liability under the

FCRA, Plaintiff concocts a nonsensical argument that under the FCRA, CRAs should be responsible for factual disputes related to Plaintiff's motives, intent, or whether someone might think he is a "deadbeat debt-dodger":

> Plaintiff's dispute raises factual questions such as whether Plaintiff ignored notices from the Furnishers that payment was due, whether Plaintiff intentionally refused to pay, and whether Plaintiff is a deadbeat debt-dodger, instead of the victim of a creditor's failure to provide him notice as creditor was required under the HELOC agreement and the FCCPA, § 559.715, Fla. Stat.

Opp. at 8. Determining whether Plaintiff received mail from Citibank or Cenlar, whether Plaintiff "intentionally" refused to pay his debt to Citibank to Cenlar (that he agrees is his), and whether he is a "deadbeat debt-dodger" are simply not the types of facts that CRAs know about and are not what the FCRA is meant to cover. Accepting Plaintiff's argument would require CRAs to make some sort of subjective evaluation of Plaintiff's personal characteristics, actions, or state of mind, i.e., that he "intentionally" refused to pay. Not only is this nonsensical, but it would still require a threshold determination that notice was indeed legally required. Such a determination would transform CRAs into tribunals charged with adjudicating consumers' collateral attacks on the legal validity of debts. *See Carvalho*, 629 F.3d at 891-92.

### C. Plaintiff's Discussions of Discovery, the CRAs' Procedures, and the CRA's Reinvestigations Are Irrelevant to this Motion.

Throughout his Opposition, Plaintiff argues that discovery is needed and that the CRAs' reinvestigations were not sufficient. *See* Opp. at 4, 9-11. These arguments attempt to alleviate Plaintiff's *prima facie* burden of plausibly pleading an inaccuracy, especially because courts routinely dismiss cases at the pleadings stage for failing to allege an inaccuracy. *See, e.g., Alexander v. Certegy Check Servs., Inc.*, No. 8:16-CV-859-17JSS, 2016 WL 5843176, at *3 (M.D. Fla. Oct. 4, 2016); *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1374 (S.D. Fla. 2015).

As a final note, Plaintiff makes much of the CRAs' assertion that Plaintiff's claim is merely a dispute that a late payment is not his fault. *See* Opp. at 10. Yet his own Complaint explicitly alleges that "[n]o report stated that Mr. Peretz was a secondary debtor [and] that no statements or demands had ever been sent to [him]." Compl. ¶ 58. His argument belies his own allegation seeking a statement that would do just that.

No inaccuracy exists here. No reinvestigation could have uncovered an inaccuracy because there were none. As the Eleventh Circuit explained, the proper remedy in such a situation is for a consumer to file a brief statement setting forth his version of the dispute. *See* 15 U.S.C. § 1681i(b)-(c); *see also Cahlin*, 936 F.2d at 1156 n.3, 1160 n.23 ("[W]e believe that Congress provided a unique remedy for consumers to dispute how a particular dispute is characterized or interpreted on their credit report by allowing them to enclose a statement as to their version of the dispute. In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account.").

## IV. CONCLUSION

For the foregoing reasons, the CRA Defendants respectfully request that Counts I and II of Plaintiff's Complaint be dismissed with prejudice.

Respectfully submitted,

*/s/ Maria H. Ruiz*
Maria Helena Ruiz
Florida Bar No. 182923
MRuiz@kasowitz.com
Kasowitz Benson Torres LLP
1441 Brickell Avenue, Suite 1420
Miami, FL 33131
(786) 587-1044
(305) 675-2601 Fax
**Counsel for Experian Information Solutions, Inc.**


*/s/ Jason D. Joffe*
Jason Daniel Joffe
Florida Bar No. 0013564
jason.joffe@squirepb.com
Squire Patton Boggs (US) LLP
200 South Biscayne Blvd., Suite 3400
Miami, FL 33131
(305) 577-7010
(305) 577-7001 Fax
**Counsel for Equifax Information Services, LLC**


*/s/ Ritika Singh*
Ritika Singh
Florida Bar No. 1016708
rsingh@qslwm.com
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
6900 N. Dallas Parkawy, Suite 800
Plano, TX 75024
(214) 560-5442
(214) 871-2111 Fax
**Counsel for Trans Union LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Santiago Jorge Teran
steran@consumerattorneys.com
Price Law Group, APC
2125 Biscayne Boulevard
Miami, FL 33137
(347) 946-7990
(818) 600-5495 Fax
***Counsel for Plaintiff***

Lauren Goldberg Raines
lraines@bradley.com
William Blair Castle
bcastle@bradley.com
Bradley Arant Boult Cummings
100 N Tampa Street, Suite 2200
Tampa, FL 33602
(813) 559-5556
(813) 229-5946 Fax
***Counsel for Cenlar FSB***

Ritika Singh
rsingh@qslwm.com
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
6900 N. Dallas Parkway, Suite 800
Plano, TX 75024
(214) 560-5442
(214) 871-2111 Fax
***Counsel for Trans Union LLC***

Jason Daniel Joffe
jason.joffe@squirepb.com
Squire Sanders & Dempsey LLP
200 S Biscayne Boulevard, 40th Floor
Miami, FL 33131
(305) 577-7000
(305) 577-7001 Fax
***Counsel for Equifax Information Services LLC***

Ezequiel Joseph Romero
romeroe@bclplaw.com
Bryan Cave Leighton Paisner, LLP
200 South Biscayne Boulevard, Suite 400
Miami, FL 33131
(786) 322-7500
(786) 322-7501 Fax
*and*
Benjamin A. Ford
ben.ford@bclplaw.com
Louis F. Bonacorsi
lfbonacorsi@bclplaw.com
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259) 2020 Fax
***Counsel for Citibank, N.A.***

*/s/ Maria H. Ruiz*
Maria H. Ruiz